```
                 UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA
_____
BENJAMIN DERKITS                    :
                                    :      No.: 5:26-cv-77
      v.                            :
                                    :
FRESHPET, INC. t/a FRESHPET         :      JURY TRIAL DEMANDED
_____
```

CIVIL ACTION COMPLAINT

COMES NOW, Plaintiff, Benjamin Derkits, by counsel, and complains of Defendant as follows:

JURISDICTION

1.  This Court has jurisdiction over this matter pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12111 et seq. (hereinafter "ADA").  This Complaint has been filed within 90 days after issuance of a Notice of Right to Sue by the EEOC which was issued on January 5, 2026.

2.  Venue in the Eastern District of Pennsylvania is appropriate because the occurrences which are the subject of this litigation occurred in this District in Lehigh County, Pennsylvania.

PARTIES

3.  Plaintiff, Benjamin Derkits, is an adult individual who resides at 6 Longridge Court, Bath, PA 18014.

4. Defendant, Freshpet, Inc. t/a Freshpet, is a Delaware corporation which is registered in the Commonwealth of Pennsylvania and operates under a fictitious name in the Commonwealth of Pennsylvania and maintains a place of business located at 176 N. Commerce Way, Bethlehem (Lehigh County), PA 18017, which is located in this District.

## FACTS

5. Defendant employees over 15 or more people.

6. On or about December 15, 2020, Plaintiff commenced work as a machine operator at Defendant's facility located at 176 N. Commerce Way, Bethlehem, PA 18017.

7. At all times material hereto, Plaintiff was prescribed Adderall to treat attention deficit hyperactivity disorder ("ADHD"), and he notified Defendant that he was prescribed this medication when he was first hired.

8. Additionally, in about 2022, Mindy Deeds (HR representative) became familiar with Plaintiff's ADHD diagnosis because in about 2022, she saw medical documents related to a work injury which revealed his prescription medication and she asked about his prescription and Plaintiff also told her he was taking Adderall for his ADHD at that time.

9. On or about October 3, 2025, Plaintiff was asked by his supervisor, Javier Garcia, to take a "random" urine drug test.

10. Plaintiff told Mr. Garcia that he expected his ADHD medication to register a positive result.

11. The test did in fact render positive result for amphetamines, which is known to be an illicit stimulant related to methamphetamines.

12. Adderall is well known to cause a positive for amphetamines in urine drug screenings.

13. On Friday, October 10, 2025, the Defendant's drug testing facility called the Plaintiff twice and left messages asking for a return call but he did not get the messages until later that evening.

14. Plaintiff called back the drug testing facility first thing on Monday morning, October 13, 2025, and he was informed that he tested positive for amphetamines, and the facility representative asked if he had a prescription for any medication.

15. Plaintiff responded that he was prescribed Adderall for ADHD.

16. The facility representative asked Plaintiff to send a copy of the prescription by taking a photo of the prescription label on the bottle and sending it to them by 12:00 Noon on October 14, 2025.

17. In the interim, the drug testing facility sent the positive results of the drug test to Defendant.

18. After Plaintiff spoke to the drug testing facility representative, Defendant's HR Representative, Mindy Deeds, called Plaintiff about 9:30 A.M. and told Plaintiff that she received the test results and notified Plaintiff that he was terminated for failing the drug test.

19. Plaintiff explained to Ms. Deeds that he was taking Adderall for his ADHD and that he was given until 12 noon the next day to get the drug testing facility his prescription information and that he would be cleared after he provided it to them.

20. Ms. Deeds responded that "it did not matter -- it was positive."

21. Thereafter, Plaintiff, as instructed by the drug testing facility, texted a photo of the label on his prescription bottle to the drug testing facility to show he was prescribed Adderall around 12:00 noon on October 13, 2025.

22. On Tuesday, October 14, 2025, Ms. Deeds called and said: "We have updated results and it was confirmed as negative and give me a couple of days to sort this out."

23. Thus, Ms. Deeds admittedly told Plaintiff that it was going to reconsider its decision to terminate Plaintiff because it learned that he had passed the drug test.

24. On October 17, 2025, Ms. Deeds called Plaintiff and informed him that Defendant decided to move forward with the termination, saying: "We stand by our decision to terminate."

25. Plaintiff asked Ms. Deeds for an explanation, and she responded because ". . . that is what we are going to do."

26. Thus, after taking the opportunity to reconsider its decision, Defendant made the conscious decision to terminate Plaintiff for using his prescription medication to treat his disability.

27. Pursuant to 42 U.S.C. § 12210(b)(3), the term "individual with a disability" under the ADA, includes ". . . an individual who. . . is erroneously regarded as engaging in . . . [the illegal use of drugs] . . ."

28. ADHD is a disability pursuant to the ADA, because it is a mental impairment which limits one or more major life activities including but not limited to concentration and learning.

29. Defendant's agents terminated Plaintiff because they: (1) erroneously regarded Plaintiff as engaging in the illegal use of drugs; and/or (2) refused to consider an exception to its drug testing policy for a prescription medication which was used to treat his disability as a reasonable accommodation.

30. It was not enough that the drug testing facility noted that Plaintiff passed the drug screening— Defendant continued to

consider Plaintiff as unfit to perform his job due to testing positive for amphetamines.

31. Defendant wrongly perceived that Plaintiff was damaged goods and that he would not be able to carry out his job duties safely and effectively solely based on his use of Adderall and/or because he was required to use Adderall, a drug associated with amphetamines, to treat his disability.

32. At all times material hereto, Plaintiff was able to perform his job with or without reasonable accommodation.

33. Defendant's actions violated the ADA.

34. Defendant and its agents acted at all times material hereto with their authority to hire, fire and/or discipline.

35. Defendant's agents acted against Plaintiff in a bigoted, willful and malicious manner.

36. Plaintiff was subjected to humiliation, embarrassment, and mental anguish as a consequence of my termination from employment.

37. Plaintiff seeks lost pay, benefits, lost future pay, compensatory damages for emotional pain and suffering, punitive damages, attorneys' fees and costs.

38. Defendant and its decisionmakers acted with malice by intentionally discriminating against Plaintiff and by terminating him because of his disability and/or perceived disability.

**COUNT 1– ADA**

39.   Plaintiff repeats paragraphs 1-38 as if more fully set forth herein.

40.   By and through its conduct, Defendant violated the ADA by intentionally discriminating against Plaintiff and by terminating him because it erroneously regarded Plaintiff as engaging in the illegal use of drugs.

WHEREFORE, plaintiff demands that judgment be entered in his favor on Count 1 against defendant for lost pay, lost bonuses, lost benefits, other financial losses, compensatory damages for emotional pain and suffering, punitive damages, attorneys' fees, costs, interest, and any other relief that this Honorable Court deems to be fair and proper.

**COUNT 2– ADA**

41.   Plaintiff repeats paragraphs 1-40 as if more fully set forth herein.

42.   By and through its conduct, Defendant violated the ADA by intentionally discriminating against Plaintiff and by refusing to consider an exception to its drug testing policy for

a prescription medication, which was used by Plaintiff to treat his disability, as a reasonable accommodation.

/s/ Samuel A. Dion
_____
Samuel A. Dion, Esq.
Dion & Goldberger
1845 Walnut Street
Suite 1199
Philadelphia, PA 19103
215-546-6033
Fax: 215-546-6269

Date: January 5, 2026        Attorney for Plaintiff